IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF PUERTO RICO

In RE:

| | | |
|---|---|---|
| LAURA I. GALINDEZ MATOS | * | CHAPTER 11 |
| | * | CASE NO. 17-01578 (ESL) |
| | * | |
| DEBTORS | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

PLAN OF REORGANIZATION FOR

DRA, LAURA I. GALINDEZ MATOS

Dated:  September 5, 2017

EMILY D. DAVILA
LAW OFFICES EMILY D. DAVILA RIVERA
Midtown Bldg, Suite 311
420 Ponce De León
San Juan, PR 00918
TEL.(787) 753-2368 , FAX (787)  9620
davilawe@prtc.net
davilalaww@prtc.net
Attorney for Debtor

1

TABLE OF CONTENTS

ARTICLE I          DEFINITIONS..............................................................................................3

ARTICLE II         INTERPRETATION AND APPLICATION...............................................9

ARTICLE III        CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS………10

ARTICLE IV         IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS AND
                   EQUITY INTERESTS.....................................................................................11

ARTICLE V          PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY
                   INTERESTS UNDER THE PLAN  …..................................................................11

ARTICLE VI         PROVISIONS FOR TREATMENT OF UNCLASSIFIED CLAIMS
                   UNDER THE PLAN…………..…………………………………..…12

ARTICLE VII        ACCEPTANCE  OR  REJECTION  OF  THE  PLAN:  EFFECT  OF
                   REJECTION  OF  ONE  OR  MORE  CLASS  OF  CLAIMS  OR  EQUITY
                   INTERESTS…………………………….…………………….…………15

ARTICLE VIII       MEANS FOR IMPLEMENTATION OF THE PLAN.............…………....16

ARTICLE IX         THE DISBURSING AGENT …………..……………………………..17

ARTICLE X          DISTRIBUTION PROVISIONS…………………………………………..18

ARTICLE XI         PROCEDURES FOR RESOLVING AND TREATING CONTESTED
                   CLAIMS………...............................................................................................20

ARTICLE XII        TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
                   LEASES……………………………….…………….……………….....22

ARTICLE XIII       SETTLEMENTS AND COMPROMISES ...................................................24

ARTICLE XIV        CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN
                   AND THE OCCURRENCE OF THE EFFECTIVE DATE……………...24

ARTICLE  XV        RETENTION  OF  JURISDICTION  …………………………………...26

ARTICLE XVI        MISCELLANEOUS PROVISIONS..............................................................27


SCHEDULE 1         ..…..……………………….…………………………………….…...35


EXHIBIT 1          BALLOTS……………………………………………………………  36

LAURA I. GALINDEZ MATOS, through the undersigned attorney, hereby submit the proposed Plan of Reorganization pursuant to the provisions of 11 USC Section 1101, et seq. and specifically to 11 USC Section 1121(a).  Pursuant to the provisions of sections 1122 and 1123 of the Bankruptcy Code, debtor proposes the classifications and treatment of claims as stated below.  Creditors and other parties in interest are urged to read and consider this Plan in its entirety since its represents a proposed legally binding agreement between the debtors, creditors and parties in interest.

## ARTICLE I
## DEFINITIONS

In this Plan, the following definitions apply:

1.1 "**Administrative Expense Claim**" means any right to payment, whether secured or unsecured, constituting a cost or expense of administration of any of the Chapter 11 Cases under Sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtor's estate, any actual and necessary costs and expenses of operating the Debtor's businesses, any indebtedness or obligations incurred or assumed by the Debtor, as debtor in possession, during the Chapter 11 Case including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, and any allowances of compensation and reimbursement of expenses to the extent allowed by Final Order under Section 330 or 503 of the Bankruptcy Code.

1.2. "**Affiliate**" means, with respect to any Person, all Persons that would fall within the definition assigned to such term in Section 101(2) of the Bankruptcy Code, if such Person was a debtor in a case under the Bankruptcy Code.

1.3. "**Allowed**" means, with respect to a Claim: (i) any Claim against a Debtor which has been listed by such Debtor in the Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed, (ii) any timely filed, liquidated, non-contingent Claim as to which the time for objection permitted by the Plan has expired

and no objection has been interposed, or (iii) any Claim expressly allowed by a Final Order or by agreement in accordance with the provisions of the Plan.

1.4. "**Assets**" means, with respect to any Debtor, all of such Debtor's right, title and interest of any nature in property of any kind, wherever located, as specified in Section 541 of the Bankruptcy Code.

1.5. "**Avoidance Actions**" means all Causes of Action of the Estate that arise under Section 544, 545, 547, 548, 549, 550, 551 and/or 553 of the Bankruptcy Code.

1.6. "**Ballot**" means those certain ballots **sent to** holders of Claims and Equity Interests for purposes of voting on the Plan.

1.7 "**Bankruptcy Code**" means the Bankruptcy Reform Act of 1978, as codified at Title 11of the United States Code, as amended from time to time and applicable to the Chapter 11 Case. ".

1.8 "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Puerto Rico, having jurisdiction over this Chapter 11 proceeding, or such other court as may be exercising jurisdiction over this Chapter 11 proceeding.

1.9. "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to section 2075 of Title 28 of the United States Code and as applicable to the Chapter 11 Cases.

1.10. "**Business Day**" means any day other than a Saturday, a Sunday or any other day on which commercial banks are required or authorized to close for business in New York, New York.

1.11. "**Cash**" means legal tender of the United States of America or readily marketable direct obligations of, or obligations guaranteed by, the United States of America.

1.12. "**Causes of Action**" means all claims, rights, actions, causes of action, liabilities, obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages or judgments, whether known or unknown, liquidated or un-liquidated, fixed or contingent, matured or un-matured, foreseen or unforeseen, asserted or unasserted, arising in law, equity or otherwise.

1.13. "**Claim**" means (a) any right to payment, whether or not such right is known  or unknown, reduced to judgment, liquidated, un-liquidated, fixed, contingent, matured, un-matured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is known or unknown, reduced to judgment, fixed, contingent, matured, un-matured, disputed, undisputed, secured, or unsecured.

4

1.14. "**Committee**" means the official committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Case.

1.15. "**Confirmation Date**" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

1.16. "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court, as it may be continued from time to time, to consider confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code.

1.17. "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan.

1.18. "**Contested Claim**" means any Claim that is not an Allowed Claim or a Disallowed Claim.

1.19. "**Contested Claim Reserve**" means a reserve of Cash that may be established in accordance with Article 11.5 of the Plan.

1.20. "**Debtor**" shall mean Laura I. Galindez Matos, who is Debtor in this Chapter 11 Case.

1.21. "**Debtor-in-Possession**" means any Debtor, in its capacity as a debtor-in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

1.22. "**Disallowed**" when used with respect to a Claim, means a Claim, or

such portion of a Claim, (a) that has been disallowed by a Final Order, including any claims that are disallowed by failing to comply the Bankruptcy Court's order establishing the bar date for filing proofs of Claim, or (b) which were included on the Schedules as disputed or contingent and for which no contrary proof of Claim was timely filed.

1.23. "**Disbursing Agent**" means the Reorganized Debtor, in (a) making the Plan Distributions contemplated under the Plan, the Confirmation Order, or any other relevant Final Order, and (b) performing any other act or task that is or may be delegated to the Disbursing Agent under the Plan.

1.24. "**Disclosure Statement**" means the Disclosure Statement filed with respect to the Plan, as it may be amended or modified from time to time.

1.25. "**Disclosure Statement Order**" means the order entered by the Bankruptcy Court (a) approving the Disclosure Statement as containing adequate information required under Section 1125 of the Bankruptcy Code, and (b) authorizing the use of the Disclosure Statement for soliciting votes on the Plan.

1.26. "**Distribution Date**" means, with respect to any Claim, (i) the Effective Date or a date that is as soon as reasonably practicable after the Effective Date, if such Claim is then an Allowed Claim, (ii) a date that is as soon as reasonably practicable after the date such Claim

5

becomes Allowed, if not Allowed on the Effective Date; or (iii) the date of payment otherwise prescribed in this Plan

1.27. "**Effective Date"** means a date selected by the Debtor which must be a Business Day that is no later than thirty (30) Business Days after all of the conditions specified in Article 14.2 have been satisfied or waived (to the extent subject to waiver).

1.28. "**Entity**" means any person or organization created by law, including, without limitation, any individual, company, corporation, limited liability company, partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, or government or any political subdivision thereof.

1.29. "**Equity Interest**" means any outstanding ownership interest in the Debtor, including without limitation, interests evidenced by common or preferred stock, partnership interests, membership interests, warrants and options or other rights to purchase or otherwise receive any ownership interest in the Debtor and any right to payment or compensation based upon any such interest, whether or not such interest is owned by the holder of such right to payment or compensation.

1.30. "**Estate**" means the estate of any Debtor created by Section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

1.31. "**Fee Application**" means an application for allowance and payment of Fee Claim.

1.32. "**Fee Claim**" means a Claim of a Professional.

1.33. "**Final Order**" means (a) an order or judgment of the Bankruptcy Court or any other court or adjudicative body as to which the time to appeal, petition for certiorari, or move for re-argument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for re-argument or rehearing is then pending, or (b) in the event that an appeal, writ of certiorari, re-argument, or rehearing thereof has been sought, such order of the Bankruptcy Court or any other court or adjudicative body shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied, or from which re-argument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for re-argument or rehearing shall have expired; provided, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be filed with respect to such order.

1.34. "**General Unsecured Clai**m" means any unsecured Claim against a Debtor, other than an Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax Claim, an Unsecured

Note Claim, a Lease Rejection Damage Claim, or an Unsecured Contingent Claim.

1.35. "**General Unsecured Bond Covered Claim**" means any unsecured Claim held against the Debtor that had been previously filed for payment with the bond insurance company.

1.36. "**Internal Revenue Code**" means the Internal Revenue Code in effect and any applicable rulings, regulations (including temporary and proposed regulations) promulgated there under, judicial decisions, and notices, announcements, and other releases of the United States Treasury Department or the IRS.

1.37. "**IRS**" means the United States Internal Revenue Service.

1.38. "**Lease Rejection Damage Claim**" means any Claim arising out of the rejection of an unexpired lease of non-residential real property pursuant to Section 365 of the Bankruptcy Code.

1.39. "**Notice of Confirmation**" means the notice of entry of the Confirmation Order to be filed with the Bankruptcy Court and mailed by the Claims Agent to holders of Claims and Equity Interests.

1.40. "**Objection Deadlin**e" means the deadline for filing objections to Claims as set forth in the Plan.

1.41. "**Person**" means an individual, corporation, partnership, limited liability company, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity,
or political subdivision thereof, or any other entity.

1.42. "**Petition Date**" means March 7, 2017.

1.43. "**Plan**" means this Chapter 11 Plan of Reorganization, either in its present form or as it maybe amended, supplemented, or otherwise modified from time to time, and the exhibits and schedules hereto, as the same may be in effect at the time such reference becomes operative.

1.44. "**Plan Distribution**" means the payment or distribution under the Plan of cash, assets, or instruments evidencing an obligation under the Plan to the holder of an allowed claim or allowed equity interest.

1.45. "**Plan Documents**" means the documents that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court as specified in Article 2.4 of the Plan.

1.46. "**Plan Supplement**" means the compilation of Plan Documents or forms of documents specified in the Plan, including, but not limited to any exhibits or schedules to the Plan not included herewith, each in form and substance acceptable to the Debtor, which Debtor shall, as provided in Article 2.4, file with the Bankruptcy Court on or before the date that is ten (10) days prior to the Confirmation Hearing or at such other time as established by the Bankruptcy Court, all of which

are incorporated herein by reference.

1.47. "**Pre-petition Collateral**" means the Pre-petition Personal Property Collateral and the Pre-petition Real Property Collateral.

1.48. "**Priority Non-Tax Claim**" means any Claim entitled to priority in payment as specified in Section 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code.

1.49. "**Priority Tax Claim**" means any Claim, whether secured or unsecured, entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

1.50. "**Professional**" means a Person retained or to be compensated for services rendered or costs incurred on or after the Petition Date and on or prior to the Effective Date pursuant to Sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code in these Chapter 11 Cases.

1.51. "**Rejection Damage Claim**" means any Claim arising out of the rejection of an executory contract or unexpired lease pursuant to Section 365 of the Bankruptcy Code.

1.52. "**Reorganized Debtor**" means from and after the Effective Date, Jorge E. Rodriguez and any successors thereto.

1.53. "**Schedule**s" means the schedules of assets and liabilities and list of Equity Interests and the statements of financial affairs filed by the Debtor with the Bankruptcy Court, as required by Section 521 of the Bankruptcy Code and in conformity with the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be amended or supplemented by the Debtor from time to time in accordance with Bankruptcy Rule 1009.

1.54. "**Section 503(b)(9) Bar Date**" means the deadline for the filing of Section 503(b)(9) Claims established pursuant to an order of the Bankruptcy Court.

1.55. "**Section 503(b)(9) Claims**" means any Claims against the Debtor entitled to administrative expense status pursuant to Section 503(b)(9) of the Bankruptcy Code.

1.56. "**Secured Claim**" means (a) a Claim secured by a lien on any Assets, which lien is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, and which is duly established in the Chapter 11 Cases, but only to the extent of the value of the holder's interest in the collateral that secures payment of the Claim; (b) a Claim against the Debtor that is subject to a valid right of setoff under Section 553 of the Bankruptcy Code, but only to the extent of the Allowed amount subject to setoff as provided in Section 506(a) of the Bankruptcy Code; and (c) a Claim deemed or treated under the Plan as a Secured Claim; provided, that, to the extent that the value of such

8

interest is less than the amount of the Claim which has the benefit of such security, the unsecured portion of such Claim shall be treated as a General Unsecured Claim unless, in any such case the class of which Claim is a part makes a valid and timely election in accordance with Section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

1.57. "**Subordinated Claim**" means a Claim against any Debtor subordinated by a Final Order.

1.58. "**Unsecured Contingent Claim**" means any Claim for which a proof of Claim was filed and which Claim is contingent in nature, but excluding any Claim estimated.

1.59. "**U.S. Trustee**" means the Office of the United States Trustee for Region 4.


<u>ARTICLE II</u>

<u>INTERPRETATION AND APPLICATION</u>

2.1. **Interpretation**.

Unless otherwise specified, all section, article, exhibit and schedule references in the Plan are to the respective section in, article of, or exhibit or schedule to, the Plan, as the same may be amended, waived, or modified from time to time.  Words denoting the singular number shall include the plural number and vice versa, as appropriate, and words denoting one gender shall include the other gender.  The Disclosure Statement may be referred to for purposes of interpretation to the extent any term or provision of the Plan is determined by the Bankruptcy Court to be ambiguous.

2.2. **Application of Definitions and Rules of Construction Contained in the Bankruptcy Code.**

Words and terms defined in section 101 of the Bankruptcy Code have the same meanings when used in the Plan, unless a different definition is set forth in Article 1 hereof.  The rules of construction contained in section 102 of the Bankruptcy Code, other than section 102(5) of the Bankruptcy Code, apply to the construction of the Plan.  For the purposes of construction of the Plan, "or" is disjunctive.

2.3 **Other Terms.**

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.

2.4. **Incorporation of Plan Documents.**

All appendices, exhibits and schedules to the Plan and the Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein. All Plan Documents shall

be filed with the Bankruptcy Court as part of the Plan Supplement not less than ten (10) days prior to the commencement of the Confirmation Hearing or at such other time as established by the Bankruptcy Court, provided, however, that any Plan Documents that are or may be subject to confidentiality provisions or otherwise contain confidential or propriety information may be filed in redacted form or under seal. Holders of Claims and Equity Interests may obtain a copy of the Plan Documents (in redacted form, as applicable, and excluding any Plan Documents that are filed under seal), once filed, by a written request sent to the following address:

> **Emily D. Davila, Esq.**
> **420 Ponce de Leon Ave.**
> **Midtown Building**
> **Suite 311**
> **San Juan PR 00918**
> davilalaww@prtc.net
> davilalawe@prtc.net

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND EQUITY INTEREST

Except as otherwise provided herein, for the purposes of organization, voting and all confirmation matters, all Claims and all Equity Interests in the Debtor will be classified as set forth in this Article III.

3.1. **Administrative Expense Claims and Priority Tax Claims**.

As provided by Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims will not be classified under the Plan, and will instead be treated separately as unclassified Claims on the terms set forth in Article VI.

3.2. **Claims and Equity Interests**.

The Claims against and the Equity Interests in, with respect to and to the extent applicable for, each Debtor are classified under the Plan as follows:

 **(a) Class 1 – Secured Claims**

Class 1 shall consist of claim secured by a lien on Debtor's property.

 **(b) Class 2 –General Unsecured Claims**

10

Class 2 shall consist of claims with no security or collateral.

 **(c) Class 3 – Shareholder Equity Interest**

Class 3 shall consist of Equity Interest in Debtor.

## ARTICLE IV

### IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS AND EQUITY INTERESTS

4.1  **Impaired and Unimpaired Classes of Claims.**

Classes 1 and 2 – Secured Claims and General Unsecured Claims, are impaired under the Plan.  Equity Interest is not impaired under the Plan.

4.2. **Impairment Controversies**.

If a controversy arises as to whether any Claim or Equity Interest or any class of Claims or Equity Interests, is impaired under the Plan, the Bankruptcy Court shall, after upon notice and motion, determine such controversy at the Confirmation Hearing.

4.3 **Classification Controversies**.

If a controversy arises as to whether any Claim or Equity Interest, or any class of Claims or Equity Interests, is properly classified under the Plan, the Bankruptcy Court shall, upon motion and notice, determine such controversy at the Confirmation Hearing.  If the Court finds  the classification of such Claim or Equity Interest, or any class of Claims or Equity Interests, is improper, such Claims or Equity Interests shall be reclassified and the ballots previously cast by the holders of such Claims or Equity Interests shall be counted in, and the Claim or Equity Interest shall receive the treatment prescribed in the class in which the Bankruptcy Court determines such Claims or Equity Interests should have been classified, without the necessity of re soliciting votes on the Plan.

## ARTICLE V

### PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN

The classes of Claims against and Equity Interests in, with respect to and to the extent applicable to the Debtor shall be treated under the Plan as follows:

### 5.1. Class 1 – Secured Claim

Except to the extent that the holder agrees to less favorable treatment, in full and final satisfaction of this Secured Claim, holder of the Class 1 Secured Claim shall retain the liens securing his Claim and receive deferred cash payments totaling at least the amount of such allowed Secured Claim, of a value, as of the Effective Date, of at least the value of such holder's interest in the collateral property, in the amounts and on the terms indicated on Schedule 1 attached hereto.

### 5.1. Class21 –General Unsecured Claims

Except to the extent that the holder agrees to less favorable treatment, in full and final satisfaction of each Allowed General Unsecured Claim, each holder of an Allowed General Unsecured Claim shall receive a three percent (3.0%) of the amount of such holder's Allowed General Unsecured Claim, without interest, payable in sixty (60) monthly installments.

### 5.3. Class 3 - Equity Interests.

Each Allowed Equity Interest shall be unimpaired under the Plan, and, pursuant to section 1124 of the Bankruptcy Code, all of the legal, equitable and contractual rights to which such Equity Interest entitles a holder in respect of such Equity Interest shall be fully reinstated and retained.

## ARTICLE VI

## PROVISIONS FOR TREATMENT OF UNCLASSIFIED CLAIMS UNDER THE PLAN

### 6.1. Unclassified Claims.

Administrative Expense Claims and Priority Tax Claims are treated in accordance with Sections 1129(a)(9)(A) and 1129(a)(9)(C) of the Bankruptcy Code, respectively. Administrative Expense Claims and Priority Tax Claims are not designated as classes of Claims for the purposes of this Plan or for the purposes of Sections 1123, 1124, 1125, 1126 or 1129 of the Bankruptcy Code.

### 6.2. Treatment of Administrative Expense Claims.

All Administrative Expense Claims shall be treated as follows:

### (a) Time for Filing Administrative Expense Claims.

The holder of an Administrative Expense Claim, other than (i) a Fee Claim; (ii) a liability incurred and payable after the Petition Date in the ordinary course of business by a

Debtor (and not past due); (iii) a Section 503(b)(9) Claim; or (iv) an Administrative Expense Claim that has been Allowed on or before the Effective Date, must file with the Bankruptcy Court and serve on the Debtor, the Committee, and the U.S. Trustee, notice of such Administrative Expense Claim within forty (40) days after service of Notice of Confirmation or such other specific date as may be established by the Bankruptcy Court.   Such notice must include at a minimum (A) the name of the Debtor which is purported to be liable for the Claim, (B) the name of the holder of the Claim, (C) the amount of the Claim, and (D) the basis of the Claim (including any documentation evidencing or supporting such Claim).   THE FAILURE TO FILE A PROOF OF ADMINISTRATIVE CLAIM ON OR BEFORE THE ADMINISTRATIVE CLAIMS BAR DATE AND THE FAILURE TO SERVE SUCH NOTICE TIMELY AND PROPERLY SHALL RESULT IN THE ADMINISTRATIVE EXPENSE CLAIM BEING FOREVER BARRED, DISALLOWED AND DISCHARGED WITHOUT FURTHER ORDER OF THE BANKRUPTCY COURT.

(b) **Time for Filing Fee Claims**.

Each Professional who holds or asserts a Fee Claim shall be required to file with the Bankruptcy Court, and serve on all parties required to receive notice, a Fee Application within forty-five (45) days after the Effective Date or such other specific date as may be established by the Bankruptcy Court.   THE FAILURE TO FILE TIMELY AND SERVE SUCH FEE APPLICATION SHALL RESULT IN THE FEE CLAIM BEING FOREVER BARRED AND DISCHARGED.

(c) **Time for Filing Section 503(b)(9) Claims**.

In accordance with the procedures set out in the Bankruptcy Court's order establishing the Section 503(b)(9) Bar Date, each holder of a Section 503(b)(9) Claim was required to submit to the Claims Agent, with copies to counsel for the Debtors, and the Committee, a request for allowance of such Section 503(b)(9) Claim prior to the Section 503(b)(9) Claim Bar Date.  THE FAILURE TO SUBMIT SUCH REQUEST BY THE SECTION 503(B)(9) BAR DATE SHALL RESULT IN THE SECTION 503(B)(9) CLAIM BEING DEEMED DISALLOWED AS AN ADMINISTRATIVE EXPENSE CLAIM. Such disallowance does not prevent such Claim from  being allowed as a Claim other than as an Administrative Expense Claim to the extent otherwise allowable.

(d) **Allowance of Administrative Expense Claims, Fee Claims and Section 503(b)(9) Claims.**

An Administrative Expense Claim (other than a Fee Claim or Section 503(b)(9) Claim) with respect

13

to which notice has been properly and timely filed and served pursuant to Article 6.2(a), or a Section 503(b)(9) Claim with respect to which a request for allowance has been properly filed and served pursuant to Article 6.2(c), shall become an Allowed Administrative Expense Claim if no objection is filed within thirty (30) days after the later of (i) the Effective Date, or (ii) the date of service of the applicable notice of Administrative Expense Claim or such later date as may be approved by the Bankruptcy Court on motion of a party in interest, without notice or a hearing.  If an objection is filed within such 30-day period (or any extension thereof), the Administrative Expense Claim shall become an Allowed Administrative Expense Claim only to the extent allowed by Final Order.  A Fee Claim in respect of which a Fee Application has been properly filed and served pursuant to Article 6.2(b) shall become an Allowed Administrative Expense Claim only to the extent allowed by Final Order.

(e) **Payment of Allowed Administrative Expense Claims.**

On the Distribution Date, each holder of an Allowed Administrative Expense Claim, shall receive in full satisfaction of such Claims (i) the amount of such holder's Allowed Administrative Expense Claim in one Cash payment, or (ii) such other treatment as may be agreed upon in writing by the Debtor and such holder; provided, that such treatment shall not provide a return to such holder having a present value as of the Effective Date in excess of such holder's Allowed Administrative Expense Claim; provided, further, that an Administrative Expense Claim representing a liability incurred in the ordinary course of business of the Debtor may be paid at the Debtor's election in the ordinary course of business.

**6.3. Treatment of Priority Tax Claims.**

(a) Unless otherwise agreed with a holder of an Allowed Priority Tax Claim, the Debtor, in its sole discretion, may choose whether Allowed Priority Tax Claims will be paid either: (1) in Cash, in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest from the Effective Date at a fixed annual rate equal to five percent (5%) and paid in regular installments of equal amount over a period not exceeding five (5) years from the Petition Date; or (2) in full in Cash on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim.  The Debtor reserves the right to prepay, without penalty, at any time under option (1) above.

(b) "Upon entry of the Confirmation Order, the Internal Revenue Service will suspend collection of any penalties that have been assessed against any party pursuant to 26 U.S.C. Section 6672 from the

14

debtor's failure to pay the federal tax liabilities listed in the Internal Revenue Service's proof of claim. This suspension will not bar the IRS from assessment of any liability or from the filing or recording of any Notice of Federal Tax Lien. This suspension will not bar the IRS from assessment of any liability or from the filing or recording of any Notice of Federal Tax Lien. This suspension will last so long as the Debtor is in compliance with Article 6.3."

## ARTICLE VII

## ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS  OR EQUITY INTERESTS

**7.1. Classes Entitled to Vote.**

Only holders of Claims in the following classes are permitted to vote on the Plan: Class1 - Secured Claim and Class 2 – General Unsecured Claims.

**7.2. Class Acceptance Requirement.**

A class of Claims shall have accepted the Plan if it is accepted by at least two thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such class that have voted on the Plan.  A class of Equity Interests shall have accepted the Plan if it is accepted by holders of at least two-thirds (2/3) in amount of the Equity Interests in such class that voted on the Plan.

**7.3. Tabulation of Votes on a Non-Consolidated Basis.**

The Balloting Agent will tabulate all votes on the Plan on a non-consolidated basis by class for purposes of determining whether the Plan satisfies Sections 129(a)(8) and/or (10) of the Bankruptcy Code with respect to the Debtor.

**7.4. Cram down.**

If all applicable requirements for confirmation of the Plan are met as set forth in Section 1129(a) of the Bankruptcy Code, except subsection (8) thereof, the Plan shall be treated as a request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code, notwithstanding the failure to satisfy the requirements of Section 1129(a)(8), on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect to each class of Claims that is impaired under, and has not accepted, the Plan.

## ARTICLE VIII

## MEANS FOR IMPLEMENTATION OF THE PLAN

**8.1. Certain Transactions on or Prior to the Effective Date.**

Pursuant to Section 1123(a)(5) of the Bankruptcy Code, the Reorganized Debtor shall, on or prior to the Effective Date (i) execute and deliver all debt instruments and related documents, including collateral documents, contemplated under the Plan; (ii) implement all settlements and compromises as set forth in or contemplated by the Plan; (iii) amend and restate its constituent documents in accordance with the terms of this Plan; and (iv) perform all obligations under the Plan Documents.

**8.2. Re-vesting of Assets.**

Upon the Effective Date, pursuant to Sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtor's Estate and any property acquired by a Debtor or Reorganized Debtor under the Plan shall vest in the Reorganized Debtor free and clear of all Claims, liens, encumbrances, charges and other interests, except as provided herein.  On and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire or dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order. Without limiting the foregoing, the Reorganized Debtor may pay the charges that it incurs on or after the Effective Date for all fees, disbursements, expenses or related support services of Professionals (including fees relating to the preparation of professional fee applications) without application to, or approval of, the Bankruptcy Court.

**8.3. Retention of Causes of Action/Reservation of Rights**.

All Causes of Action, excluding Avoidance Actions, belonging to any of the Debtor shall, upon the occurrence of the Effective Date, be vested in the Reorganized Debtor for the benefit of the Debtor and his Estate.  The rights of the Reorganized Debtor to commence, prosecute or settle such Causes of Action, respectively, shall be preserved notwithstanding the occurrence of the Effective Date. No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor will not pursue any and all available Causes of Action against him.  The Debtor and the Estate expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise provided in the Plan.  Unless any Causes of Action

16

against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Final Order, the Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including without limitation, the Doctrines of Res Judicata, Collateral Estoppel, Issue preclusion, Claim Preclusion, Estoppel (judicial, equitable or otherwise) or Laches, shall apply to such Causes of Action upon or after the confirmation or consummation of the Plan.

## ARTICLE IX.

## THE DISBURSING AGENT

**9.1. Appointment of the Disbursing Agent.**

Upon the occurrence of the Effective Date, the Reorganized Debtor shall be appointed to serve as the Disbursing Agent, and shall have all powers, rights, duties and protections afforded the Disbursing Agent under the Plan.

**9.2. Powers and Duties.**

Pursuant to the terms and provisions of the Plan, the Disbursing Agent shall be empowered and directed to (a) take all steps and execute all instruments and documents necessary to make Plan Distributions to holders of Allowed Claims and Equity Interests; (b) comply with the Plan and the obligations there under; (c) employ, retain, or replace professionals to represent it with respect to its responsibilities; (d) object to Claims as specified in Article XI, and prosecute such objections; (e) compromise and settle any issue or dispute regarding the amount, validity, priority, treatment, or Allowance of any Claim as provided in Article XI; (f) make annual and other periodic reports regarding the status of distributions under the Plan to the holders of Allowed Claims that are outstanding at such time; such reports to be made available upon request to the holder of any Contested Claim; and (g) exercise such other powers as may be vested in the Disbursing Agent pursuant to the Plan, the Plan Documents or order of the Bankruptcy Court.

## ARTICLE X

## DISTRIBUTION PROVISIONS

**10.1. Sources of Cash for Plan Distributions.**

17

All Cash necessary to make payments and Plan Distributions shall be obtained from the Cash of the Reorganized Debtor as generated from his operations and the Cash held in the Contested Claims Reserve, if any, as applicable.

**10.2  Plan Distributions.**

Pursuant to the terms and provisions of the Plan, the Debtor shall make the required Plan Distributions specified under the Plan on the relevant Distribution Date.

**10.3.  Timing of Plan Distributions.**

Each Plan Distribution shall be made on the relevant Distribution Date. In the event a Plan Distribution shall be payable on a day other than a Business Day, such Plan Distribution shall instead be paid on the immediately succeeding Business Day, but shall be deemed to have been made on the date otherwise due. A Plan Distribution shall be deemed to have been timely made if made on such date or within ten (10) days thereafter. For income tax purposes, except to the extent a Plan Distribution is made in connection to reinstatement of an obligation pursuant to section 1124 of the Bankruptcy Code, a Plan Distribution will be allocated first to the principal amount of a Claim and then, to the extent the Plan Distribution exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

**10.4.  Address for Delivery of Plan Distributions/Unclaimed Distributions.**

Subject to Bankruptcy Rule 9010, any Plan Distribution or delivery to a holder of an Allowed Claim shall be made at the address of such holder as set forth (a) in the Schedules, (b) on the proof of Claim filed by such holder, (c) in any notice of assignment filed with the Bankruptcy Court with respect to such Claim pursuant to Bankruptcy Rule 3001(e) or (d) in any notice served by such holder giving details of a change of address. If any Plan Distribution is returned to the Debtor as undeliverable, no Plan Distributions shall be made to such holder unless the Debtor is notified of such holder's then current address within ninety (90) days after such Plan Distribution was returned. After such date, if such notice was not provided, a holder shall have forfeited its right to such Plan Distribution, and the undeliverable Plan Distributions shall be returned to the Reorganized Debtor. Supplemental Plan Distributions may be made from time to time at the discretion of the Disbursing Agent.

**10.5.  Time Bar to Cash Payments.**

Checks issued in respect of Allowed Claims shall be null and void if not negotiated within one hundred and eighty (180) days after the date of issuance thereof. Requests for re-issuance of any voided check

shall be made directly to the Debtor by the holder of the Allowed Claim to whom such check was originally issued. Any claim in respect of such a voided check shall be made within one hundred and eighty (180) days after the date of issuance of such check. If no request is made as provided in the preceding sentence, any claims in respect of such void check shall be discharged and forever barred and such unclaimed Plan Distribution shall revert to the Reorganized Debtor.

10.6. **Manner of Payment under the Plan**.

Unless the Person receiving a Plan Distribution agrees otherwise, any Plan Distribution to be made in Cash under the Plan shall be made, at the election of the Debtor, by check drawn on a domestic bank or by wire transfer from a domestic bank. Cash payments to foreign creditors may, in addition to the foregoing, may be made, at the option of the Disbursing Agent, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

10.7. **Expenses Incurred on or after the Effective Date and Claims of Disbursing Agent**.

Except as otherwise ordered by the Bankruptcy Court or as provided in the Plan, the amount of any reasonable professional fees and expenses incurred by the Debtor from and after the Effective Date in connection with the effectuation of the Plan shall be paid in the ordinary course of business. Any dispute regarding compensation shall be resolved by agreement of the parties or if the parties are unable to agree, as determined by the Bankruptcy Court.

10.8. **Fractional Plan Distributions.**

Notwithstanding anything to the contrary contained herein, no Plan Distributions of fractional shares or fractions of dollars will be made. Fractional shares and fractions of dollars shall be rounded to the nearest whole unit (with any amount equal to or less than one-half share or one-half dollar, as applicable, to be rounded down).

10.09 **Surrender and Cancellation of Instruments**.

Unless otherwise provided in this Plan, as a condition to receiving any Plan Distribution, on or before the Distribution Date, the holder of an Allowed Claim evidenced by a certificate, instrument or note, other than any such certificate, instrument or note that is being reinstated or being left unimpaired under the Plan, shall (i) surrender such certificate, instrument or note representing such Claim, and (ii) execute and deliver such other documents as may be necessary to effectuate the Plan in the sole determination of the Debtor. Such certificate, instrument or note, shall thereafter be cancelled and extinguished. The Debtor shall have

19

the right to withhold any Plan Distribution to be made to or on behalf of any holder of such Claims unless and until (1) such certificates, instruments or notes are surrendered, or (2) any relevant holder provides to the Debtor an affidavit of loss or such other documents as may be required by the Debtor together with an appropriate indemnity in the customary form. Any such holder who fails to surrender such certificates, instruments or notes, or otherwise fails to deliver an affidavit of loss and indemnity prior to the second anniversary of the Effective Date, shall be deemed to have forfeited its Claims and shall not participate in any Plan Distribution. All property in respect of such forfeited Claims shall revert to the Reorganized Debtor.

## ARTICLE XI.
## PROCEDURES FOR RESOLVING AND TREATING CONTESTED CLAIMS

**11.1. Prosecution of Contested Claims.**

After the Effective Date, only the Reorganized Debtor may object to the allowance of Contested Claims filed with the Bankruptcy Court. All objections that are filed and prosecuted as provided herein shall be litigated to Final Order or compromised and settled in accordance with Article 11.3.

**11.2. Objection Deadline.**

As soon as practicable, but in no event later than one hundred and eighty (180) days after the Effective Date (subject to being extended by the order of the Bankruptcy Court upon motion of the Debtor without notice or a hearing), objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made.

**11.3. Claims Settlement.**

Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, the Disbursing Agent shall have authority to settle or compromise all Claims and Causes of Action without further review or approval of the Bankruptcy Court.

**11.4. Entitlement to Plan Distributions Upon Allowance.**

Notwithstanding any other provision hereof, if any portion of a Claim is a Contested Claim, no payment or distribution provided hereunder shall be made on account of

such Claim unless and until such Claim becomes an Allowed Claim that is not a Contested Claim, subject to the setoff rights as provided in Article 16.17.  When a Claim that is not an Allowed Claim as of the Effective Date becomes an Allowed Claim the holder of such Allowed Claim shall thereupon become entitled to receive the Plan Distributions in respect of such Claim the same as though such Claim had been an Allowed Claim on the Effective Date.

11.5. **Contested Claims Reserve**.

The Debtor may establish a Contested Claims Reserve in a segregated account for the purpose of effectuating distributions to the holders of Contested Claims pending the allowance or disallowance of such Claims in accordance with the Plan.

11.6**. Estimation of Claims**.

The Debtor may at any time request that the Bankruptcy Court estimate any Unsecured Contingent Claim, unliquidated or Contested Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any Unsecured Contingent Claim, the amount so estimated shall constitute (a) the Allowed amount of such Claim, which shall be reclassified as a General Unsecured Claim; (b) a maximum limitation on such Unsecured Contingent Claim, or (c) in the event such Unsecured Contingent Claim is estimated in connection with the estimation of other Unsecured Contingent Claims, a maximum limitation on the aggregate amount of Allowed Claims on account of such Unsecured Contingent Claims so estimated.  In the event that the Bankruptcy Court estimates any un-liquidated or Contested Claim, the amount so estimated shall constitute (a) the Allowed amount of such Contested Claim; (b) a maximum limitation on such Contested Claim, or (c) in the event such Contested Claim is estimated in connection with the estimation of other Contested Claims within the same Class, a maximum limitation on the aggregate amount of Allowed Claims on account of such Contested Claims so estimated.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, or on more than one such Claim within a Class of Claims, as applicable, the Debtor may pursue supplementary proceedings to object to the allowance of such Claims.  All of the aforementioned objections, estimations and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently

compromised, settled, withdrawn or otherwise resolved by any mechanism approved by the Bankruptcy Court.

**11.7. No Recourse Against the Debtor or the Reorganized Debtor**.

If a Contested Claim Reserve is established pursuant to Article 11.5, any holder of a Contested Claim that ultimately becomes an Allowed Claim shall be entitled to receive its applicable distribution under the Plan solely from any Contested Claim Reserve established on account of such Contested Claims.  In no event shall any holder of a Contested Claim have any recourse with respect to distributions made, or to be made, under the Plan to holders of such Claims, to any Debtor or the Reorganized Debtor on account of such Contested Claim, regardless of whether such Contested Claim shall ultimately become an Allowed Claim, and regardless of whether sufficient Cash or other property remains available for distribution in the Contested Claim Reserve established on account of such Contested Claims at the time such Claim becomes entitled to receive a distribution under the Plan.

ARTICLE XII.

TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**12.1. Assumption and Rejection of Executory Contracts and Unexpired Leases**.

(a) All executory contracts and unexpired leases of the Debtor shall be assumed pursuant to the provisions of Section 365 of the Bankruptcy Code effective as of and subject to the occurrence of the Effective Date, unless another date is specified in the Plan except:

(i)  any executory contracts and unexpired leases that are the subject of separate motions to assume or assume and assign filed pursuant to Section 365 of the Bankruptcy Code by the Debtor before the Effective Date;

(ii) contracts and leases listed in a schedule to the Disclosure Statement and any subsequently filed "Schedule of Rejected Executory Contracts and Unexpired Leases" to be filed by the Debtor with the Bankruptcy Court before the entry of, or as an exhibit to, the Confirmation Order;

(iii) all executory contracts and unexpired leases rejected by order of the Bankruptcy Court entered before the Effective Date; and (iv) any executory contract or unexpired lease that is the subject of a dispute over the amount or manner of cure pursuant to the next article hereof and for which the Debtor makes a motion to reject such contract or lease at any time based upon the existence of such

dispute or the resolution of such dispute. The Debtor reserves the right to amend the schedule to the Disclosure Statement or any "Schedule of Rejected Executory Contracts and Unexpired Leases" prior to the entry of the Confirmation Order. Each executory contract and unexpired lease to be assumed by the Debtor shall include modifications, amendments, supplements, restatements or other similar agreements made directly or indirectly by any agreement, instrument or other document that affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on the schedule to the Disclosure Statement or any "Schedule of Rejected Executory Contracts and Unexpired Leases."

(b).The inclusion of a contract, lease or other agreement in this Article 12.1 or on any schedule to the Disclosure Statement or any "Schedule of Rejected Executory Contracts and Unexpired Leases" shall not constitute an admission by the Debtor as to the characterization of whether any such included contract, lease, or other agreement is, or is not, an executory contract or unexpired lease or whether any claimants under any such contract, lease or other agreement are time-barred from asserting Claims against the Debtor. The Debtor reserves all rights with respect to the characterization of any such agreements.

(c) The Plan shall constitute a motion to assume and assign to the Reorganized Debtor such executory contracts and unexpired leases assumed pursuant to this Article 12.1, and the Debtor shall have no liability thereunder except as is specifically provided in the Plan. Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such assumption and assignment pursuant to Sections 365(a), (b) and (f) of the Bankruptcy Code, and a finding by the Bankruptcy Court that the requirements of Section 365(f) of the Bankruptcy Code have been satisfied.

(d) The Plan shall constitute a motion to reject such executory contracts and unexpired leases as set forth in the schedule to the Disclosure Statement or any "Schedule of Rejected Executory Contracts and Unexpired Leases." Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such rejections pursuant to Section 365(a) of the Bankruptcy Code, subject to the occurrence of the Effective Date, and a finding by the Bankruptcy Court that each such rejected agreement, executory contract or unexpired lease is burdensome and that the rejection thereof is in the best interests of the Debtor and his estate.

(e) Any non-Debtor counterparty to an agreement, contract or unexpired lease to be assumed and assigned who disputes the assumption and assignment of an executory contract or unexpired lease must file with the Bankruptcy Court, and serve upon the Debtor, a written objection to the assumption and

assignment, which objection shall set forth the basis for the dispute by no later than ten (10) days prior to the Confirmation Hearing. The failure to timely object shall be deemed a waiver of any and all objections to the assumption and assignment of executory contracts and leases as set forth herein or as otherwise designated as being assumed or assumed and assigned in this Article 12.1.

12.2**. Claims Arising from Rejected Contracts.**

Rejection Damage Claims must be submitted to the Claims Agent, with copies to counsel for the Debtor, by the first Business Day that is at least thirty (30) days following the Effective Date. Properly submitted Rejection Damage Claims shall be treated as Class 3 General Unsecured Claims under the Plan, except to the extent that a Rejection Damage Claim is also a Lease Rejection Damage Claim, in which case, such claim shall be treated as a Lease Rejection Damage Claim under the Plan. All Lease Rejection Damage Claims shall be subject to objection by the Reorganized Debtor. Any Rejection Damage Claims that are not properly submitted pursuant to this Article 12.3 will forever be barred from assertion and shall not be enforceable against the Reorganized Debtor, his Estate, Affiliates or Assets.

ARTICLE XIII.

SETTLEMENTS AND COMPROMISES

13.1.**[Reserved].**

ARTICLE XIV.

CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE OCCURRENCE OF THE EFFECTIVE DATE

14.1. **Conditions Precedent to Confirmation**.

The following are conditions precedent to confirmation of the Plan:

(a)  The clerk of the Bankruptcy Court shall have entered an order or orders:

(i) Approving the Disclosure Statement as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code;

(ii) Authorizing the solicitation of votes with respect to the Plan;

(iii) Determining that all votes are binding and have been properly tabulated as acceptances or

24

rejections of the Plan;

(iv) Confirming and giving effect to the terms and provisions of the Plan;

(v) Determining that all applicable tests, standards and burdens in connection with the Plan have been duly satisfied and met by the Debtor and the Plan;

(vi) Approving the Plan Documents; and

(vii) Authorizing the Debtor to execute, enter into, and deliver the Plan documents and to execute, implement, and to take all actions otherwise necessary or appropriate to give effect to, the transactions contemplated by the Plan and the Plan Documents.

(b) The Confirmation Order, the Plan Documents and the Plan are each in a form satisfactory to the Debtor.

**14.2.   Conditions Precedent to the Occurrence of the Effective Date.**

The following are conditions precedent to the occurrence of the Effective Date:

(a)  The Confirmation Order shall have been entered by the Clerk of the Bankruptcy Court, be in full force and effect and not be subject to any stay or injunction;

(b)  There is sufficient available Cash to make all payments to be made on the Effective Date; and

(c)  All necessary consents, authorizations and approvals shall have been given for the transfers of property and the payments required to be made on the Effective Date, including, without limitation, satisfaction or waiver of all conditions to the obligations of the Debtors under the Plan and the Plan Documents.

**14.3. Waiver of Conditions.**

The Debtors may waive any one or more of the conditions set forth in Article 14.1 or Article 14.2(b) or (c) in a writing executed by each of them without notice or order of the Bankruptcy Court and without notice to any parties in interest.

**14.4.   Effect of Non-Occurrence of the Effective Date.**

If the Effective Date shall not occur, the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against or Equity Interests in a Debtor; (b) prejudice in any manner the rights of any party-in-interest; or (c) constitute an admission, acknowledgement, offer or undertaking by the Debtor or any other party-in-interest.

<u>ARTICLE XV.</u>

<u>RETENTION OF JURISDICTION</u>

Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter (a) arising under the Bankruptcy Code, (b) arising in or related to the Chapter 11 Cases or the Plan, or (c) that relates to the following:

(i) To hear and determine any and all motions or applications pending on the Confirmation Date or thereafter brought in accordance with Article XII hereof for the assumption, assumption and assignment or rejection of executory contract or unexpired leases to which the Debtor is a party or with respect to which any of the Debtor may be liable, and to hear and determine any and all Claims and any related disputes (including, without limitation, the exercise or enforcement of setoff or recoupment rights, or rights against any third party or the property of any third party resulting there from or from the expiration, termination or liquidation of any executory contract or unexpired lease);

(ii) To determine any and all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Debtor, as applicable after the Effective Date;

(iii) To hear and determine any objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including, without express or implied limitation, to hear and determine any objections to the classification of any Claim and to allow, disallow or estimate any Contested Claim in whole or in part;

(iv) To issue such orders in aid of execution of the Plan to the extent authorized and/or contemplated by Section 1142 of the Bankruptcy Code;

(v) To consider any modifications of the Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(vi) To hear and determine all Fee Applications and applications for allowances of compensation and reimbursement of any other fees and expenses authorized to be paid or reimbursed under the Plan or the Bankruptcy Code;

(vii) To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection to the Plan, the Plan Documents or their interpretation, implementation, enforcement, or consummation;

(viii) To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection to the Confirmation Order (and all exhibits to the Plan) or its interpretation,

26

implementation, enforcement, or consummation;

(ix) To the extent that Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any Claim or Cause of Action by, on behalf of, or against the Estates;

(x) To determine such other matters that may be set forth in the Plan, or the Confirmation Order, or that may arise in connection to the Plan, or the Confirmation Order;

(xi) To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Reorganized Debtor, or the Debtor-in-Possession may be liable, directly or indirectly, in accordance with Section 346, 505, and 1146 of the Bankruptcy Code;

(xii) To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection to any setoff and/or recoupment rights of the Debtor or any Person under the Plan;

(xiii) To hear and determine all controversies, suits, and disputes that may relate to impact upon, or arise in connection to Causes of Action of the Debtor commenced by the Disbursing Agent, the Debtor or any third parties, as applicable, before or after the Effective Date;

(xiv) To enter an order or final decree closing the Chapter 11 Case;

(xv) To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of the Plan or the Confirmation Order; and

(xvi) To hear and determine any other matters related hereto and not inconsistent with Chapter 11 of the Bankruptcy Code.

## ARTICLE XVI.
## MISCELLANEOUS PROVISIONS

**16.1.   Third Party Agreements; Subordination.**

The Plan Distributions to the various classes of Claims and Equity Interests hereunder shall not affect the right of any Person to levy, garnish, attach, or employ any other legal process with respect to such Plan Distributions by reasons of any claimed subordination rights or otherwise.  All of such rights and any agreements relating thereto shall remain in full force and effect, except as compromised and settled pursuant to the Plan.  Plan Distributions shall be subject to and modified by any Final Order directing distributions other than as provided in the Plan.  The right of the Debtor to seek subordination of any Claim or Equity Interest pursuant to Section 510 of the Bankruptcy

Code is fully reserved; and the treatment afforded any Claim or Equity Interest that becomes a Subordinated Claim or subordinated Equity Interest at any time shall be modified to reflect such subordination. Unless the Confirmation Order provides otherwise, no Plan Distributions shall be made on account of a Subordinated Claim or subordinated Equity Interest. 16.2.    **Payment of Statutory Fees**.

All fees payable pursuant to Section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtor on or before the Effective Date.

16.3.    **Satisfaction of Claims**.

The rights afforded in the Plan and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Equity Interests of any nature whatsoever, including any accrued post petition interest, against the Debtor or the Debtor-in-Possession, or any of its Estate, Asset, properties, or interests in property.  Except as otherwise provided herein, upon completion of plan payments, all Claims against and Equity Interests in the Debtor or the Debtor-in-Possession shall be satisfied, discharged, and released in full. The Reorganized Debtor shall not be responsible for any pre-discharge obligations of the Debtor or the Debtor-in-Possession, except those expressly assumed by any Reorganized Debtor, as applicable. Except as otherwise provided herein, all Persons and Entities shall be precluded and forever barred from asserting against the Debtor, their respective successors or assigns, or their Estates, Assets, properties, or interests in property any event, occurrence, condition, thing, or other or further Claims or Causes of Action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the discharge whether or not the facts of or legal bases therefore were known or existed prior to the discharge.

16.4.    **Exculpation**.

The Debtor shall not be liable for any Cause of Action arising in connection to or out of the Administration of the Chapter 11 Case, pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct as determined by Final Order of the Bankruptcy Court. The Confirmation Order shall enjoin all holders of Claims and Equity Interests from asserting or prosecuting any Claim or Cause of Action against any Exculpated Person as to which such Exculpated Person has been exculpated from liability pursuant to the preceding sentence.

28

16.5.   **Discharge of Debtor**.

Debtor is an individual and § 1141 (d)(3) is not applicable

Confirmation of the Plan does not discharge any debt provided for in the Plan until the court grants a discharge on completion of all payments under the Plan, or as otherwise provided in § 1141 (d)(5) of the Code. Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007 (c) of the Federal Rules of Bankruptcy Procedure. Upon completion of plan payments, without further notice or order, all Claims of any nature whatsoever shall be automatically discharged forever.  Except as otherwise provided in the Plan or the Confirmation Order, on the completion of plan payments, the Debtor, his Estate, and all successors thereto shall be deemed fully discharged and released from any and all Claims, including, but not limited to, demands and liabilities that arose before the discharge, and all debts of the kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a proof of Claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under Section 502 of the Bankruptcy Code; or (c) the holder of a Claim based upon such debt has accepted the Plan.   As provided in Section 524 of the Bankruptcy Code,                    such                    discharge                    shall void any judgment against the Debtor, his Estate, or any successor thereto at any time obtained to the extent it relates to a Claim discharged, and operates as an injunction against the prosecution of any action against the Reorganized Debtor or property of the Debtor or his Estate to the extent it relates to a discharged Claim.

16.6.   **Notices**.

Any notices, requests, and demands required or permitted to be provided under the Plan, in order to be effective, shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**Emily D. Davila, Esq.**
**420 Ponce de Leon Ave.**
**Midtown Building**
**Suite 311**
**San Juan PR 00918**
**davilalaww@prtc.net**

davilalawe@prtc.net
**Tel 787-759-8090, Fax 759-9620**

16.7**. Headings**.

The headings used in the Plan are inserted for convenience only, and neither constitutes a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

16.8**. Governing Law**.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the Commonwealth of Puerto Rico, without giving effect to the conflicts of laws principles thereof, shall govern the construction of the Plan and any agreements, documents, and instruments executed in connection to the Plan, except as otherwise expressly provided in such instruments, agreements or documents.

16.9. **Exemption from Transfer Taxes**.

 Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, lien, pledge or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

16.10. **Notice of Entry of Confirmation Order and Relevant Dates**.

Promptly upon entry of the Confirmation Order, the Debtor shall publish as directed by the Bankruptcy Court and serve on all known parties in interest and holders of Claims and Equity Interests, notice of the entry of the Confirmation Order and all relevant deadlines and dates under the Plan.

16.11. **Interest and Attorneys' Fees**.

(a) Interest accrued after the Petition Date will accrue and be paid on Claims only to the extent specifically provided for in this Plan, the Confirmation Order or as otherwise required by the Bankruptcy Court or by applicable law.

(b) Except as set forth in the Plan or as ordered by the Bankruptcy Court, no award or reimbursement of attorneys' fees or related expenses or disbursements shall be allowed on, or in connection with, any Claim.

16.12. **Modification of the Plan.**

30

As provided in Section 1127 of the Bankruptcy Code, modification of the Plan may be proposed in writing by the Debtor at any time before confirmation, provided that the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with Section 1125 of the Bankruptcy Code.  The Debtor may modify the Plan at any time after confirmation and before substantial consummation, provided that the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under Section 1129 of the Bankruptcy Code, and the circumstances warrant such modifications.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted such Plan as modified if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim or Equity Interest of such holder.

16.13.  **Revocation of Plan**.

(a) The Debtor reserves the right to revoke and withdraw the Plan or to adjourn the Confirmation Hearing prior to the occurrence of the Effective Date.  If the Debtor revokes or withdraws the Plan, or if the Effective Date does not occur as to such Debtor, the Plan and all settlements and compromises set forth in the Plan and not otherwise approved by a separate Final Order shall be deemed null and void and nothing contained herein and no acts taken in preparation for consummation of the Plan shall be deemed to constitute a waiver or release of any Claims against or Equity Interests in such Debtor or to prejudice in any manner the rights of the Debtor or any other Person in any other further proceedings involving such Debtor.

(b) In the event that the Debtor chooses to adjourn the Confirmation Hearing, the Debtor reserve the right to amend, modify, revoke or withdraw the Plan and/or submit any new plan of reorganization at such times and in such manner as they consider appropriate, subject to the provisions of the Bankruptcy Code.

16.14.  **Set off Rights.**

In the event that the Debtor has a Claim of any nature whatsoever against the holder of a Claim against such Debtor, then such Debtor may, but is not required to, set off against the Claim (and any payments or other Plan Distributions to be made in respect of such Claim hereunder) such Debtor's Claim against such holder. Neither the failure to set off nor the allowance of any Claim under the Plan shall constitute a waiver or release of any Claims that the Debtor may have against the holder of any Claim.

16.15. **Compliance with Tax Requirements**.

In connection to the Plan, the Debtor or the Disbursing Agent shall comply with all withholding and reporting requirements imposed by federal, state, local, and foreign taxing authorities and all Plan Distributions hereunder shall be subject to such withholding and reporting requirements. Notwithstanding the above, each holder of an Allowed Claim or Equity Interest that is to receive a Plan Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any government unit, including income, withholding and other tax obligations, on account of such Plan Distribution. The Disbursing Agent has the right, but not the obligation; to not make a Plan Distribution until such holder has made arrangements satisfactory to the Disbursing Agent for payment of any such tax obligations.

16.16. **Rates.**

The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.

16.17. **Injunctions**.

Upon completion of plan payments, all Persons who have been, are, or may be holders of Claims against or Equity Interests in the Debtor shall be permanently enjoined from taking any of the following actions against or affecting the Debtor, the Reorganized Debtor, the Estate or the Assets, or their respective assets and property, with respect to such Claims or Equity Interests (other than actions brought to enforce any rights or obligations under the Plan):

(i) Commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, all suits, actions, and proceedings that are pending upon completion of plan payments, which must be withdrawn or dismissed with prejudice);

(ii) Enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order;

(iii) Creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance; and

(iv) Asserting any setoff, right of subrogation or recoupment of any kind; provided, that any defenses, offsets or counterclaims which the Debtor may have or assert in respect of the above referenced Claims are fully preserved in accordance with Article 16.15.

16.18.     **Binding Effect.**

The Plan shall be binding upon the Reorganized Debtor, the holders of all Claims and Equity Interests, parties in interest, Persons and Entities and their respective successors and assigns. To the extent any provision of the Disclosure Statement or any other solicitation document may be inconsistent with the terms of the Plan; the terms of the Plan shall be binding and conclusive.

16.19**.    Severability**.

 IN THE EVENT THE BANKRUPTCY COURT DETERMINES THAT ANY PROVISION OF THE PLAN IS UNENFORCEABLE EITHER ON ITS FACE OR AS APPLIED TO ANY CLAIM OR EQUITY INTEREST OR TRANSACTION, THE DEBTOR MAY MODIFY THE PLAN IN ACCORDANCE WITH ARTICLE 16.13 SO THAT SUCH PROVISION SHALL NOT BE APPLICABLE TO THE HOLDER OF ANY SUCH CLAIM OR EQUITY INTEREST OR TRANSACTION SUCH A DETERMINATION OF UNENFORCEABILITY SHALL NOT (A) LIMIT OR AFFECT THE ENFORCEABILITY AND OPERATIVE EFFECT OF ANY OTHER PROVISION OF THE PLAN OR (B) REQUIRE THE RESOLICITATION OF ANY ACCEPTANCE OR REJECTION OF THE PLAN.

16.20**.   No Admissions**.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER CAUSES OF ACTION OR THREATENED CAUSES OF ACTIONS, THIS PLAN SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS PLAN SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, AND OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, AND EQUITY INTERESTS IN, THE DEBTOR, AS DEBTOR-IN-POSSESSION IN THIS CHAPTER 11 CASE.

16.21. **Dissolution of the Committee.** Effective on the Effective Date, the Committee shall dissolve automatically, whereupon its members, professionals, and agents shall be exculpated from any further duties and responsibilities in the Chapter 11 Case and under the Bankruptcy Code, except with respect to (i) applications for Fee Claims or reimbursement of expenses incurred as a member of the Committee, and (ii) any motions or other actions seeking enforcement or implementation of the provisions of this Plan or the Confirmation Order or pending appeals of orders entered in the Chapter 11 Case.

In San Juan, Puerto Rico this September 5, 2017.


I CERTIFY that on this date a copy of this document was filed with the Clerk of the Court using the CM/ECF system which will send notification to all CM/ECF participants, to the Office of the U.S. Trustee, Assistant U.S. Trustee Monsita Lecaroz, Esq. and by regular mail to all creditors and parties in interest as per creditors list.

Respectfully submitted.


Debtor

/S/ LAURA I. GALINDEZ MATOS

Attorney for Debtors

/S/ EMILY D DAVILA
USDC-PR #214503
420 PONCE DE LEON
MIDTOWN SUITE #311
SAN JUAN, PR 00918
davilalawe@prtc.net


**SCHEDULE 1**

**Laura I. Galindez Matos**

**Secured Claim Plan Treatment
Term Sheet
(Mercedes Benz Financial Services USA)**

*Secured Claims*:

The Allowed amount of the two Secured Claims of Mercedes Benz Financial Services USA is $99,675, amount that equals the collateral value at the petition date.

*Interest Rate*:

5.0% per annum shall accrue on the creditor's secured claims allowed.  Creditor will receive payment in full over time for the face amount of the Allowed Secured Claims;

*Maturity Date*:

The two Secured Allowed Claims of Mercedes Benz Financial Services USA shall be paid in full through sixty (60) monthly combined installments of $1,881, commencing as of the Effective Date.

*Collateral*:

Chattel mortgage on two motor vehicles owned and used by Debtor in its business and personal activities.  Mercedes Benz Financial Services USA shall retain full security interest in the collateral property.

<u>Official Form 314</u>
(12/15)

**United States Bankruptcy Court**
**DISTRICT OF PUERTO RICO**

In re    **LAURA IVETTE GALINDEZ MATOS**                                      ,

                                   Debtor

Case No.    **17-01578-ESL**

Address    **BEVERLY HILLS #17**
           **San Juan, PR 00928**

Last four digits of Social Security or Individual Tax-

Chapter    **11**

Payer-Identification (ITIN) No(s)., (if any):        **xxx-xx-4060;**

Employer's Tax Identification No(s). (if any):        _____

---

# Class [ ] Ballot for Accepting or Rejecting Plan of Reorganization

DR LAURA I GALINDEZ MATOS filed a plan of reorganization dated September 5, 2017 (the Plan) for the Debtor in this case. The Court has will enter Order to conditionally approve the Disclosure Hearing and schedule a hearing to approve the Disclosure Statement with respect to the Plan (the Disclosure Statement). The Disclosure 15 Statement, you may obtain a copy from EMILY D DAVILA, ESQ., 420 PONCE DE LEON, MIDTOWN BLDG. #311, SAN JUAN, P.R. 00918, TEL. 787-759-8090.

Court approval of the disclosure statement does not indicate approval of the Plan by the Court.

**You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your [claim] [equity interest] has been placed in class [ ] under the Plan. If you hold claims or equity interests in more than one class, you will receive a ballot for each class in which you are entitled to vote.**

**If your ballot is not received by** EMILY D DAVILA, ESQ., 420 PONCE DE LEON, MIDTOWN BLDG. #311, SAN JUAN, P.R. 00918 **on or before hearing on confirmation of Plan, and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.**

**Acceptance or Rejection of the Plan.**

Official Form 314
(12/15)                                                                                                                    Page 2

[At this point the ballot should provide for voting by the particular class of creditors or equity holders receiving the ballot using one of the following alternatives;]

[If the voter is the holder of a secured, priority, or unsecured nonpriority claim:]

The undersigned, the holder of a Class [ ] claim against the Debtor in the unpaid amount of Dollars ($      )

[or, if the voter is the holder of a bond, debenture, or other debt security:]

The undersigned, the holder of a Class [ ] claim against the Debtor, consisting of Dollars ($      ) principal amount of [describe bond, debenture, or other debt security] of the Debtor (For purposes of this Ballot, it is not necessary and you should not adjust the principal amount for any accrued or unmatured interest.)

[or, if the voter is the holder of an equity interest:]

The undersigned, the holder of Class [ ] equity interest in the Debtor, consisting of _____ shares or other interests of [describe equity interest] in the Debtor

[In each case, the following language should be included:]


*Check one box only*

☐ **Accepts the plan**
☐ **Rejects the plan**

Dated: _____

Print or type name: _____

Signature: _____ Title (if corporation or partnership) _____

Address: _____

_____

_____


**Return this ballot to:**

EMILY D DAVILA, ESQ., 420 PONCE DE LEON, MIDTOWN BLDG. #311, SAN JUAN, P.R. 00918.

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com                                                Best Case Bankruptcy